# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Ronald C. Hughes, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 15 C 50137 |
| | ) | |
| Napleton's Holdings, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | Judge Frederick J. Kapala |

## ORDER

Defendants' motion to dismiss [12] is granted in part and denied in part. Counts VI and VII are preempted. Plaintiff is allowed 14 days from the date of this order to inform the court whether he wishes to voluntarily dismiss Counts VI and VII or wishes to proceed with them before the NLRB. Should plaintiff elect the latter he is directed to file a brief within 30 days of the date of his election stating his position on whether the entire case needs to be stayed while he proceeds before the NLRB and defendants will have 14 days following the filing of plaintiff's brief to respond.

## STATEMENT

This case comes before the court on the Federal Rule of Civil Procedure 12(b)(6) motion to dismiss filed by defendants, Napleton's Holdings, LLC, Napleton's Auto Werks, Inc., and Napleton Motor Corp. (collectively "Napleton"). For the reasons set forth below, the motion is granted in part and denied in part.

### I. ALLEGATIONS

The following facts are derived from the complaint and for purposes of this motion are accepted as true. Plaintiff, Ronald C. Hughes, was employed by Napleton from June 2009 until his termination on November 7, 2014. In March 2012, plaintiff filled out forms, including an authorization card for the Chemical and Production Workers, Local 30 ("the Union"), in order to obtain new employee health insurance. Napleton assured plaintiff that he would not really be a union member, that they were just "piggybacking" on the union health insurance. At that time, plaintiff did not receive a copy of a collective bargaining agreement ("CBA"), no dues were deducted from his pay, and he received no other indications that he was a union member.

As it turned out, plaintiff was indeed an employee under the CBA between Napleton and the Union. The CBA required, among other things, that Napleton pay plaintiff $10 per hour and pay eighty percent of his employee-only health care premium. Napleton refused to do either despite plaintiff's demands. From March 2012 until the termination of his employment, plaintiff was a participant in the health coverage provided by the Central States Joint Board Health and Welfare

Fund ("the Health Plan"), which is a welfare plan as defined in the Employee Retirement Income Security Act of 1974 ("ERISA").

On September 9, 2013, after plaintiff advised the Union that he did not believe union dues were being deducted from his pay, a Napleton's employee told plaintiff that the Union was now going to drop the health insurance which would cost Napleton "millions and millions of dollars." On September 13, 2013, Napleton demoted plaintiff from Porsche Sales Manager to Sales Consultant. Plaintiff attempted to sell cars from the Cadillac showroom, but was not assigned a telephone, a work station, or a work computer. Plaintiff was then transferred to the Loves Park showroom where Napleton disabled plaintiff's computer and refused to provide him with his list of past and current clients or his email contacts. Napleton also had plaintiff sell cars that were not selling in high volume, established unrealistic quotas, and failed to provide him with assistance in selling cars that was provided to other salespersons.

On September 30, 2013, Napleton began deducting union dues from the pay of employees who were enrolled in the Health Plan. In late September or early October 2013, Napleton's Chief Financial Officer told plaintiff that he had no rights because of his union membership, only health insurance, and harassed and attempted to intimidate him because he contacted the Union concerning his health insurance benefits.

In October 2013, Napleton reduced plaintiff's base pay from $350 per week to $250 per week. In February 2014, plaintiff learned that he had skin cancer. In March 2014, plaintiff learned that his claims for the treatment he received were not being paid and that Napleton had not been paying his health insurance premiums since September 1, 2013, despite deducting premiums from his pay.

In April 2014, plaintiff filed charges with the National Labor Relations Board ("NLRB") against Napleton. In his first and second amended charge, plaintiff alleged that Napleton (1) handed out union authorization cards with an instruction to sign in violation of the NLRA; (2) threatened and disciplined him for engaging in union and protected activity; (3) unlawfully deducted dues from his pay without a valid checkoff authorization; and (4) interfered with, restrained, and coerced employees by interrogating them, implying a threat of unspecified reprisal for engaging in union and protected activity, and instructing them not to speak to other employees. On September 30, 2014, the NLRB approved a settlement of the charges providing plaintiff with $252.20 in back pay, $3.87 in interest, and $1 in excess tax liability. Plaintiff did not accept the settlement.

In October 2014, Napleton advised its employees that it had to obtain new, more expensive, health insurance, and that it was plaintiff's fault. Napleton required plaintiff to agree to a new pay plan by November 7, 2014. When plaintiff refused to agree to the new pay plan, Napleton advised plaintiff on November 7, 2014, that he could no longer work without a pay plan, effectively terminating plaintiff's employment.

On June 9, 2015, plaintiff filed the instant seven-count complaint. Plaintiff's federal claims are in Counts I-III. In Count I, styled "ERISA Retaliation," plaintiff alleges that Napleton discharged, fined, suspended, expelled, disciplined, or discriminated against him for exercising his rights under the health insurance plan, and interfered with his rights under the plan in violation of 29 U.S.C. §§ 1132, 1140. In Count II, styled "ERISA Failure to Pay Contributions," plaintiff alleges

that Napleton failed to provide him with what he was entitled to under the ERISA Health Care Plan, including by failing to pay eighty percent of the single coverage premium in violation of 29 U.S.C. § 1132(a)(1)(B). In Count III, plaintiff alleges that Napleton failed to pay him $7.25 an hour for all hours he worked in violation of the Fair Labor Standards Act (" FLSA") and that Napleton discharged or discriminated against him because he filed a complaint or instituted a proceeding related to the FLSA in violation of 29 U.S.C. § 215(a)(3).

Plaintiff's supplemental state claims are in Counts IV-VII. In Count IV, plaintiff alleges that under the CBA Napleton agreed to pay him $10 per hour and to pay eighty percent of his employee-only health insurance premiums and failed to pay these amounts in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/14(c). Napleton also attempted to coerce him into releasing all his claims against them threatening not to pay him $8,100 in commissions he earned. In Count V, plaintiff alleges that Napleton failed and refused to pay him $8.25 per hour for all hours worked in violation of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/4(a). In Count VI, plaintiff alleges that Napleton's actions violate Sections 15 and 20 of the Illinois Whistle Blower Act, 740 ILCS 174/15 & 20. In Count VII styled, "Illinois Retaliatory Discharge," plaintiff alleges that, in violation of the public policy of the State of Illinois, and with conscious or reckless disregard for his rights, Napleton terminated his employment in retaliation for his lawful reporting of their violations of law.

## II. ANALYSIS

Napleton contends that plaintiff has not stated a claim upon which relief can be granted because his claims before this court mirror the claims he already brought before the NLRB, his claims are completely within the jurisdiction of the NLRB and, therefore, his complaint should be dismissed or stayed until he has exhausted his administrative remedies with the NLRB. In response, plaintiff argues that the primary jurisdiction of the NLRB does not preempt any of his claims because they do not intertwine with federal labor law or require interpretation of the CBA. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is the appropriate vehicle for seeking dismissal on preemption grounds. Healy v. Metro. Pier & Exposition Auth., 804 F.3d 836, 840 (7th Cir. 2015).

The National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 et seq., is a national uniform body of labor law which, among other things, establishes protected labor activities under Section 7, 29 U.S.C. § 157, and sanctions unfair labor practices under Section 8, 29 U.S.C. § 158. The NLRA created the NLRB and gave it primary jurisdiction to administer federal labor law and to regulate legitimate labor disputes. 29 U.S.C. § 160. "[A]s a general rule, the NLRB preempts both federal and state claims based on conduct that is arguably prohibited under the NLRA." United States v. Palumbo Bros., Inc., 145 F.3d 850, 861 (7th Cir. 1998) (citing San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 242-45 (1959)). Thus, what has come to be known as Garmon preemption "seeks to prevent conflicts between state and local regulation and Congress's integrated scheme of regulation embodied in Sections 7 and 8 of the NLRA [and] further seeks to protect the NLRB's primary jurisdiction in cases involving sections 7 and 8 of the NLRA." 520 S. Mich. Ave. Assocs., Ltd. v. Shannon, 549 F.3d 1119, 1125 (7th Cir. 2008)(citations omitted).

3

Napleton argues that all of plaintiff's causes of action are predicated on his claim that Napleton "discharged, fined, suspended, expelled, disciplined, or discriminated against [him] for exercising his rights under the plan, under 29 U.S.C. §§ 1132, 1140." According to Napleton, these claims are exactly the type that should be adjudicated by the NLRB since they involve alleged interference with, restraining of, or coercion of plaintiff in the exercise of his rights and such claims clearly implicate unfair labor practices under the NLRA and, therefore, fall within the exclusive primary jurisdiction of the NLRB. But in Count I plaintiff does not seek to remedy an unfair labor practice prohibited under Section 8 of the NLRA. Instead, he alleges that he was retaliated against for exercising his rights under the ERISA Health Plan, and was interfered with when attaining rights under the Health Plan, in violation of ERISA. See Palumbo Bros., 145 F.3d at 864 (recognizing that causes of action involving the application of independent federal statutes are not preempted); Lupiani v. Wal-Mart Stores, Inc., 435 F.3d 842, 846 (8th Cir. 2006) (holding that an ERISA claim was not in conflict with the NLRA). Therefore, Count I is not preempted.

In Count II, plaintiff complaints that Napleton failed to provide him with his rights under the ERISA Health Plan by failing to pay eighty percent of his single-coverage premium. It is true that Napelton's obligation to pay this percentage of plaintiff's premium arises out of the CBA. However, "not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is preempted by § 301 or other provisions of the federal labor law." Allis–Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985). "Questions involving an employer's promised obligations to a[n] employee benefit plan –that is, their obligations under the terms of the plan or under the terms of a collectively bargained agreement– are not excluded from scope of the statute, nor are they matters within the exclusive jurisdiction of the NLRB." Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc., 502 F.3d 740, 745 (7th Cir. 2007) (quotation marks omitted). Consequently, Count II is not preempted.

In Count III, plaintiff alleges Napelton violated the FLSA by failing to pay him $7.25 per hour for all the hours he worked.[1] This claim is an independent, statutorily-conferred right to a minimum wage, distinct from any rights granted under the CBA. See Barrentine v. Ark.-Best Freight Sys.,Inc., 450 U.S. 728, 745 (1981) (holding that the FLSA's "enforcement scheme grants individual employees broad access to the courts," and that "[n]o exhaustion requirement or other procedural barriers are set up, and no other forum for enforcement of statutory rights is referred to or created by the statute"); see also Polanco v. Brookdale Hosp. Med. Ctr., 819 F. Supp. 2d 129, 134 (E.D.N.Y. 2011) (holding that FLSA minimum wage claim was not preempted by LMRA). Thus, Count III is also not preempted.

As for plaintiff's state law claims, the Garmon rule provides that the NLRA preempts state regulation of conduct that is protected or prohibited, or that is arguably protected or prohibited, by the NLRA. Garmon, 359 U.S. at 243-44. Another type of preemption, known as § 301 preemption, has been explained as follows:

---

[1] Although in Count III of the complaint plaintiff also mentions that he was discriminated against because he filed a complaint related to the FLSA violation, in his response to Napleton's motion to dismiss he states that "Count III seeks only to enforce Plaintiff's rights under the FLSA as to minimum wages."

4

> To determine whether a state-law claim is preempted, we must look at the legal character of the claim: a question of state law, entirely independent of any understanding embodied in the collective bargaining agreement, may go forward as a state-law claim, whereas a claim, the resolution of which is sufficiently dependent on an interpretation of the CBA, will be preempted. If a state-law claim requires reference to, but not interpretation of, a collective bargaining agreement, the claim is not preempted.

Baker v. Kingsley, 387 F.3d 649, 657 (7th Cir. 2004) (citations and quotation marks omitted). Preemption will not occur if a claim merely references the CBA for a term such as rate of pay. See Livadas v. Bradshaw, 512 U.S. 107, 124 (1994).

In Count IV, plaintiff alleges a violation of the IWPCA, in that he was not paid $10 per hour nor was eighty percent of his Health Plan premium paid for him, as was agreed to in the CBA. However, the mere reference to the CBA to determine a term like a rate of pay without seeking a determination of that rate or a construction of a term does not involve an interpretation of the CBA and is therefore not preempted. See Barlett v. City of Chi., No. 14 C 7225, 2015 WL 135286, at *5 (N.D. Ill. Jan. 9, 2015). The IMWL claim in Count V does not reference the $10 rate established in the CBA but, rather, seeks the statutory minimum rate of $8.25 per hour established under Illinois law. Consequently, the resolution of neither Count IV nor V is dependent on an interpretation of the CBA and therefore neither claim is preempted.

In Count VI, plaintiff alleges generally that "[a]ll Defendants' actions, alleged above, violate 740 ILCS 174/20, Section 20 of the Illinois Whistleblower Act." In his response to the motion to dismiss, plaintiff makes no argument opposing Napleton's contention that this claim is preempted under Garmon principles. "Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court [and courts] apply that rule where a party. . . effectively abandons [a claim] by not responding to alleged deficiencies in a motion to dismiss." Alioto v. Town of Lisbon, 651 F.3d 715, 721 (7th Cir. 2011) (citations omitted). Accordingly, plaintiff has waived any argument that Count VI is not preempted. In addition, the generality of this claim violates the pleading standard stated in Ashcroft v. Iqbal, 556 U.S. 662, 668 (2009), and makes it impossible to determine whether it is preempted. However, if this claim is based on plaintiff's reports to the NLRB it is preempted for the same reasons that the claim in Count VII is preempted as discussed immediately below.

Count VII is an Illinois retaliatory discharge claim in which plaintiff alleges that Napleton terminated his employment "in retaliation for plaintiff's lawful reporting of all Defendants' violations of law to Defendants and to the United States of America and local authorities." To be precise, plaintiff reported to the NLRB that Napleton (1) handed out union authorization cards with an instruction to sign in violation of the NLRA; (2) threatened and disciplined him for engaging in union and protected activity; (3) unlawfully deducted dues from his paychecks without a valid checkoff authorization; and (4) interfered with, restrained, and coerced employees by interrogating them, implying a threat of unspecified reprisal for engaging in union and protected activity, and instructing them not to speak to other employees. By asserting before the NLRB that these four activities were unfair labor practices, plaintiff is in turn alleging in Count VII that he has been retaliated against for reporting unfair labor practices to the NLRB. Section 8(a)(4) of the NLRA

makes it an unfair labor practice for an employer "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter." 29 U.S.C. § 158(a)(4). As such, the claim alleged in Count VII is within the exclusive primary jurisdiction of the NLRB and is therefore preempted.

Under these circumstances, the appropriate course of action would be to stay the claims in Counts VI and VII, as opposed to dismissing them, see Baker v. IBP, Inc., 357 F.3d 685, 688 (7th Cir. 2004). Upon entering that stay, the court would also need to address whether it is appropriate to stay the entire case pending NLRB action. However, no stay would be required were plaintiff to voluntarily dismiss these claims. Therefore, the court will allow the plaintiff 14 days in which he may elect to voluntarily dismiss Counts VI and VII, which will allow the case to immediately go forward in this court; or to proceed with them before the NLRB. Should plaintiff elect the latter he is directed to file a brief within 30 days of the date of his election stating his position on whether the entire case needs to be stayed while he proceeds before the NLRB and Napleton will have 14 days following the filing of plaintiff's brief to respond.

### III. CONCLUSION

Napleton's motion to dismiss is granted in part and denied in part. Counts VI and VII are preempted and will either be dismissed or stayed. The motion is denied in all other respects.

Date: 1/11/2016                    ENTER:

                                       _____
                                       FREDERICK J. KAPALA
                                       District Judge